[Cite as *Cleveland v. Arnold*, 2013-Ohio-1791.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
## No. 98693

## CITY OF CLEVELAND

PLAINTIFF-APPELLEE

vs.

## JAMES L. ARNOLD

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cleveland Municipal Court
Case No. 2011 CRB 038539

**BEFORE:** Boyle, P.J., S. Gallagher, J., and Keough, J.

**RELEASED AND JOURNALIZED:** May 2, 2013

**ATTORNEY FOR APPELLANT**

Edward M. Heindel
450 Standard Building
1370 Ontario Street
Cleveland, Ohio   44113

**ATTORNEYS FOR APPELLEE**

Victor R. Perez
Chief City Prosecutor
BY:   Christina Haselberger
Assistant City Prosecutor
8th Floor Justice Center
1200 Ontario Street
Cleveland, Ohio   44113

MARY J. BOYLE, P.J.:

{¶1} Defendant-appellant, James Arnold, appeals his conviction for aggravated menacing, raising three assignments of error:

[I.] The trial court erred when it denied Arnold's right to represent himself and did not perform any colloquy to insure that Arnold was making a knowing, intelligent and voluntary waiver of his right to counsel.

[II.] Arnold was denied his right to effective assistance of counsel guaranteed to him by Art. 1, Sec. 10 of the Ohio Constitution and the Sixth and Fourteenth Amendments to the United States Constitution.

[III.] The conviction for aggravated menacing was against the manifest weight of the evidence.

{¶2} Finding no merit to the appeal, we affirm.

## Procedural History and Facts

{¶3} On October 28, 2011, plaintiff-appellee, the city of Cleveland, filed a criminal complaint against Arnold for a single count of aggravated menacing, in violation of Cleveland Codified Ordinances 621.06, that allegedly occurred the day before. Arnold pleaded not guilty to the charge, and the matter proceeded to a jury trial where the following evidence was presented.

{¶4} Samaj Taylor testified that he was engaged to Tamira Green in 2011. On October 27, 2011, Taylor confronted Arnold at the Friendly Inn, a community recreational center, accusing him of stalking Green and warning him to leave her alone. The confrontation escalated with Taylor being asked to leave. Later that evening, Taylor,

along with an acquaintance, Antonio Amerson, walked over to Green's apartment complex, after learning that Arnold was walking around the back.

{¶5} According to Taylor, Arnold appeared out of nowhere and asked him if he had a problem. Taylor responded: "No, I don't have a problem. I just want you to leave Tamira alone. You're scaring her, man." The conversation escalated with Arnold threatening, "I'll kill you. I'll put you in your grave." Taylor testified that, at this point, he was scared, especially since he was still recovering from a recent gunshot wound. Taylor further testified that Arnold appeared to have a pipe in his sleeve or maybe a gun. Taylor immediately started screaming for help.

{¶6} The Cleveland Metropolitan Housing Authority ("CMHA") police, who were already in the housing complex investigating a possible burglary, immediately responded to the screams. Sergeant Richard Schilling testified that he heard the victim screaming, "He's going to kill me," and observed Arnold running away from Taylor. Sgt. Schilling further testified that it appeared Arnold was "holding something in his coat, towards his waist." Sgt. Schilling's partner, Sgt. Christopher Svec, pursued Arnold to his apartment and ordered him to stop, but Arnold ignored the commands. The officers apprehended Arnold after he opened his door. Sgt. Schilling testified that, after Arnold opened his door, he asked for Arnold's gun. Arnold said that he did not have a gun — he only had a curling iron, indicating that he intended to "fuck Taylor up" with the iron. Sgt. Schilling further explained: "I didn't think that it was that serious * * * until actually

we saw the curling iron," which weighed approximately five to six pounds and was all metal.

{¶7} The city offered the testimony of Taylor's ex-fiancée, Green, and Amerson to corroborate Taylor's testimony. Green testified that Arnold had been stalking her and that she had expressed concern to Taylor. Amerson testified that he accompanied Taylor over to the housing complex on the day of Arnold's arrest because Taylor wanted a "witness." According to Amerson, Arnold threatened Taylor that "he was going to get a gun" and then Taylor screamed for help. Amerson said that Taylor was visibly shaking from the incident.

{¶8} Arnold testified on his own behalf, stating that he never threatened Taylor. To the contrary, Arnold testified that Taylor went looking for him with two other men and that Taylor was holding a long tree branch. Arnold further testified that Taylor talked to him about Green. Arnold assured Taylor that he was not interested. Arnold believed that everything was fine but then, without any explanation, Taylor started acting like a madman, screaming, "Police. Police. He gone kill me." Arnold admits that he then left and continued to run even after he heard the police order him to stop. He explained that he does not trust the police because some of his relatives were shot by the police, despite being unarmed.

{¶9} Arnold further testified that he never told the officer that he was going to "fuck up" Taylor with the curling iron — "[t]hat's a complete lie." Arnold testified that, although he had a curling iron on his possession when he ran into Taylor, that was not the

same iron that the city offered at trial. He explained that he had a small curling iron on his possession because he was en route to attend to a client.

{¶10} Arnold offered two witnesses to corroborate his testimony. Bonita Robinson testified that she witnessed Taylor making all of these hand gestures at Arnold during the altercation but that she did not hear everything being said. Sherman Stewart testified that Arnold did not threaten to kill Taylor. According to him, Arnold told Taylor to stop approaching him with a stick, stating the following: "You cannot be running up on me carrying a stick screaming at me in front of my building, because I think you're going to hit me in the back of the head, man. I might have to do something to you." Stewart further testified that, after Arnold said that, Taylor took off running down the street, screaming for help.

{¶11} The jury found Arnold guilty of the single count of aggravated menacing. The trial court subsequently sentenced Arnold to 180 days in jail, suspending all of the time, and imposed a $1,000 fine, suspending $800. The trial court further ordered that Arnold be subject to one year of community controlled sanctions, which included taking anger management classes and having a substance abuse evaluation.

{¶12} Arnold appeals his conviction, raising three assignments of error.

<u>Right to Self-Representation</u>

{¶13} In his first assignment of error, Arnold argues that the trial court denied him his right to self-representation and failed to engage in the necessary colloquy to allow for a waiver of counsel. This argument has no merit.

{¶14} The record reveals that Arnold never indicated that he wanted to discharge his defense counsel and represent himself. Instead, Arnold, along with his defense counsel, asked the court if Arnold could question Green on cross-examination and therefore function as "co-counsel." Notably, the request was made after Arnold's counsel had begun cross-examination of Green — the last witness presented by the city in its case in chief. The trial court later granted Arnold's second request to question witnesses after the city had rested its case but Arnold never exercised this right.

{¶15} Although a defendant has a constitutional right to self-representation if he or she desires, "[a]n accused has no right to act as co-counsel in his own behalf." *State v. Landrum*, 53 Ohio St.3d 107, 559 N.E.2d 710 (1990). Indeed, it is well settled that a defendant has "the right either to appear pro se or to have counsel," but "he has no corresponding right to act as co-counsel on his own behalf." *State v. Thompson*, 33 Ohio St.3d 1, 16, 514 N.E.2d 407 (1987).

{¶16} The first assignment of error is overruled.

Ineffective Assistance of Counsel

{¶17} In his second assignment of error, Arnold argues that his trial counsel was deficient because he failed to object to several instances of hearsay testimony.

{¶18} Reversal of a conviction for ineffective assistance of counsel requires a defendant to show that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *State v. Smith*, 89 Ohio St.3d 323, 327, 731 N.E.2d 645 (2000), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80

L.Ed.2d 674 (1984).  Defense counsel's performance must fall below an objective standard of reasonableness to be deficient in terms of ineffective assistance of counsel. *See State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989).  Moreover, the defendant must show that there exists a reasonable probability that, were it not for counsel's errors, the results of the proceeding would have been different.  *State v. White*, 82 Ohio St.3d 16, 23, 693 N.E.2d 772 (1998).

{¶19} Arnold argues that several hearsay statements were admitted into evidence without defense counsel making any objection and that those statements established a critical issue at trial — "whether Arnold had been previously stalking Green."  Arnold further challenges Sgt. Schilling's testimony as to conversations that he had with Taylor, Green, and Amerson in gathering statements from them.

{¶20} The record reveals, however, that the same evidence that Arnold complains of as being improper hearsay evidence was admitted properly through the actual declarants.  Indeed, Green testified in detail as to her belief that Arnold was stalking her. Amerson and Taylor both testified as to the same matters that Sgt. Schilling reported as learning through his interview of them.  We therefore cannot say that, had defense counsel objected and the evidence had been excluded, the outcome of the trial would have been different.

{¶21} We further note that Sgt. Schilling testifying that he heard the victim screaming, "He's going to kill me," did not constitute inadmissible hearsay.  Generally, statements offered to explain a police officer's underlying reasons for conduct while

investigating a crime are not hearsay. *State v. Primeau*, 8th Dist. No. 97901, 2012-Ohio-5172, ¶ 67; *see also State v. Thomas*, 61 Ohio St.2d 223, 232, 400 N.E.2d 401 (1980). "The conduct to be explained should be relevant, equivocal and contemporaneous with the statements. * * * Additionally, such statements must meet the standard of Evid.R. 403(A)." *State v. Blevins*, 36 Ohio App.3d 147, 149, 521 N.E.2d 1105 (10th Dist.1987).

{¶22} In this case, the statement was not offered for the truth of the matter but to explain why the incident "attracted [Sgt. Schilling's] attention," resulting in he and his partner leaving their other investigation to pursue Arnold. The statement also explained why Sgt. Schilling asked Arnold for the gun upon reaching his apartment. We further note that this statement was admissible as an excited utterance under Evid.R. 803(2), which is defined as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Here, Taylor made the statement immediately after Arnold threatened him, believing his life was in danger. Thus, because the statement was properly admissible as either an excited utterance or as an explanation for Sgt. Schilling's investigation, we cannot say that Arnold's trial counsel was ineffective by not objecting to Sgt. Schilling's testimony.

{¶23} The second assignment of error is overruled.

### Manifest Weight of the Evidence

{¶24} In his final assignment of error, Arnold contends that his conviction is against the manifest weight of the evidence.

**{¶25}** In *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, the Ohio Supreme Court explained the appropriate review of a claim challenging the manifest weight of the evidence as follows:

> The question to be answered * * * is whether "there is *substantial* evidence upon which a [trier of fact] could reasonably conclude that all the elements have been proved beyond a reasonable doubt." In conducting this review, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the [trier of fact] "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."

(Citations omitted.) *Id.* at ¶ 81.

**{¶26}** "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *Tibbs v. Florida*, 457 U.S. 31, 45, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982).

**{¶27}** Arnold was convicted of aggravated menacing pursuant to Cleveland Codified Ordinances 621.06, which provides: "No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of such other person or member of his or her immediate family."

**{¶28}** Arnold argues that the jury lost its way when it believed that he had made a threat to cause serious physical harm to Taylor. He argues that the absence of any gun in his apartment, coupled with the undisputed evidence that Taylor had been asked to leave the Friendly Inn earlier that day, made him more credible than the city's witnesses. He

further contends that evidence of him running away negates any finding of serious physical harm.

**{¶29}** Although this case clearly involves two completely different version of events between Taylor and Arnold, the jury was in the best position to decide credibility. Further, Sgt. Schilling's testimony as to Arnold admitting that he intended to "fuck [Taylor] up" with the iron weighed heavily in favor of the city's case. Moreover, by the time that Arnold was running away from the scene, the act of the aggravated menacing had already occurred. We cannot say that this is the exceptional case where the jury clearly lost its way.

**{¶30}** The third assignment of error is overruled.

**{¶31}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cleveland Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

MARY J. BOYLE, PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
KATHLEEN ANN KEOUGH, J., CONCUR