[Cite as *State v. Patterson*, 2014-Ohio-1621.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 100086

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## DAMAN PATTERSON

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-13-571398

**BEFORE:** Boyle, A.J., Celebrezze, J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** April 17, 2014

**ATTORNEY FOR APPELLANT**

Gregory Scott Robey
Robey & Robey
14402 Granger Road
Maple Heights, Ohio   44137

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:   Ronni Ducoff
          Carl Sullivan
Assistant County Prosecutors
Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio   44113

MARY J. BOYLE, A.J.:

**{¶1}** Defendant-appellant, Daman Patterson, appeals his conviction and sentence for rape, kidnapping, aggravated robbery, robbery, and having weapons while under disability. Finding no merit to the appeal, we affirm.

Procedural History and Facts

**{¶2}** On June 11, 2012, Cleveland police officers responded to a 911 call in the area of Dudley Street in Cleveland, Ohio. The caller, F.B., told the 911 dispatcher that she had been robbed at gunpoint and forced to give oral sex in a secluded garage. The police located F.B. and recovered semen that F.B. still had on her hand that she had spit out after the perpetrator left her. The police recovered the saliva and semen on F.B.'s hand with a tissue and submitted the tissue for DNA testing. The police arrested Patterson in connection with the crimes after it was determined that the minor DNA profile recovered on the tissue was consistent with Patterson's profile.

**{¶3}** In February 2013, Patterson was indicted on the following counts: rape, in violation of R.C. 2907.02(A)(2); two counts of kidnapping, in violation of R.C. 2905.01(A)(3) and (4); aggravated robbery, in violation of R.C. 2911.01(A)(1); robbery, in violation of R.C. 2911.02(A)(2) — all of these counts carrying a one- and three-year firearm specification; and having weapons while under disability, in violation of R.C. 2923.13(A)(3). Some of the counts also carried sexual motivation and sexually violent predator specifications.

**{¶4}** Patterson pleaded not guilty to all the charges and waived his right to a jury trial on the sexually violent predator specifications. The remaining counts proceeded to a jury trial.

**{¶5}** Prior to trial, the state obtained buccal swabs from Patterson, which later were confirmed to conclusively match the DNA profile recovered at the scene from F.B. This evidence was presented at trial, along with the testimony of F.B., who detailed being forced at gunpoint into an abandoned garage, forced to hand over her money and cell phone, sit in a chair and perform oral sex on the perpetrator, and then ultimately ordered to count to 100 before leaving the garage. According to F.B., after Patterson ejaculated in her mouth, she pretended to swallow, and that after Patterson left, she spit the ejaculate in her hand and later turned it over to the police.

**{¶6}** The state also offered the testimony of the responding police officer, Thomas Manson, who found F.B. and recovered the evidence of the semen that F.B. still had on her hand when he arrived. Officer Manson testified that F.B. was "upset" at the scene and that F.B. led Officer Manson to the garage where the perpetrator had taken her. Officer Manson stated that there was a plastic white lawn chair, as described by F.B., and that the garage appeared as though "the door had been left open for some time." Officer Manson further testified that he transferred F.B. to the hospital and turned over the bag containing the tissue with the reported semen to the Sexual Assault Nurse Examiner ("SANE") to be included with the rape kit.

**{¶7}** The state further presented the testimony of Bobbie Adcox, a resident on Dudley Avenue, who called 911 after F.B. approached her on her front porch, "crying" and "shaking a little bit." According to Adcox, F.B. was a "little hysterical," asking her to call 911 after informing her that "a man pulled her into a garage,* * * robbed her, and had her perform oral sex on him." Adcox further testified that F.B. had her hand cupped and F.B. kept spitting into her hand while waiting for the police to arrive. According to Adcox, F.B. had semen in her hand.

**{¶8}** The jury ultimately found Patterson guilty on all counts. The state deleted the sexual predator specification. The trial court sentenced Patterson to a total term of 26 years in prison on the convictions. The trial court also sentenced Patterson to three years in prison in Case No. CR-13-572226, wherein he pleaded guilty to an amended indictment of attempted possession of deadly weapon while under detention. The trial court ordered that the three-year term be served consecutive to the 26-year term, resulting in a total prison term of 29 years.

**{¶9}** Patterson appeals, raising the following nine assignments of error:

 I. The state's failure to timely provide the defense with a copy of confirmatory DNA testing results deprived appellant a fair trial and due process of law.

 II. The trial court abused its discretion when it failed to appoint appellant new counsel after being advised of continuing serious problems between appellant and his counsel, thereby denying him due process of law and depriving him a fair trial.

 III. Trial counsel provided ineffective assistance in failing to conduct meaningful voir dire and meaningful cross-examination of the state's DNA expert.

IV.   The prosecution engaged in affirmative misconduct which denied appellant due process of law and deprived him a fair trial.

V.   The evidence presented was insufficient as a matter of law to sustain a conviction.

VI.   The verdict was against the manifest weight of the evidence.

VII.   The trial court committed critical errors in the trial and the cumulative effect denied appellant due process of law and a fair trial.

VIII.   The trial court erred in imposing a separate sentence on kidnapping in count five — where there was no separate animus.

IX.   The trial court erred in imposing maximum consecutive sentences.

Untimely Discovery

{¶10} In his first assignment of error, Patterson argues that the state failed to timely disclose the results of a critical confirmatory DNA test, thereby depriving him of a fair trial and due process of law.

{¶11} The record reveals that Patterson filed his request for discovery on February 15, 2013, which the state responded to on February 27, 2013.  The state, however, further obtained a court order, forcing Patterson to submit to buccal swabs for DNA testing on April 15, 2013 — two weeks before the scheduled trial date.  On April 30, 2013, the state moved for a continuance because the results of the DNA testing were not finished.  Over Patterson's objection, the trial court continued the trial date until May 20, 2013.  On the morning of trial, the state filed its supplemental response to Patterson's request for discovery, providing the DNA test results.

{¶12} Patterson contends that the state should not have been able to offer evidence of the confirmatory DNA test because of the untimely disclosure of the test results and that such late disclosure violated Crim.R. 16(B)(1)(d). He further argues that "because of the late disclosure, defense counsel was effectively prevented from analyzing the report and moving the trial court for appointment of an independent expert to contradict the state's expert."

{¶13} The record reveals, however, that the state provided the test results to the defense as soon as the state received them. The state emailed the defense attorney the results "within minutes" of receiving them on May 17th — three days prior to trial. Ohio Crim.R. 16(B)(1)(d) mandates that the prosecution give the accused an opportunity to inspect or copy results or reports of any scientific tests. The state complied with this rule. Further, Patterson was put on notice as early as April 30, 2013 — nearly a month prior to trial — that the state anticipated confirmatory DNA results and its intention to use the results at trial. Under these circumstances, we find that the state's disclosure of the test results was neither untimely nor a violation of Crim.R. 16. *See State v. Downing*, 9th Dist. Summit No. 22012, 2004-Ohio-5952 (state's disclosure of DNA evidence report to the defense three days before trial was neither untimely nor in violation of Crim.R. 16 when defense had earlier been put on notice that state was waiting results and intending to use at trial).

{¶14} Moreover, although Patterson moved to exclude the test results as being untimely and overly prejudicial, he never moved the trial court for a continuance of the

trial date in order to retain an independent expert. We therefore find his argument that he was prohibited from obtaining an independent expert or that he was denied adequate time to be disingenuous.

{¶15} The first assignment of error is overruled.

Appointment of New Counsel

{¶16} In his second assignment of error, Patterson argues that "the trial court abused its discretion in failing to appoint new counsel after being advised of serious problems" between himself and counsel.

{¶17} In *State v. Deal*, 17 Ohio St.2d 17, 244 N.E.2d 742 (1969), the Ohio Supreme Court held that when an accused raises a specific complaint regarding his dissatisfaction with counsel during the course of the trial, the trial court has an obligation to ensure that the record contains an adequate investigation of the complaint before continuing with the trial. *Id.* at 19-20. "The right to counsel is important enough that in a situation such as this a reviewing court should have sufficient information in the record to determine whether a claim of inadequate counsel is justified." Once a defendant makes the requisite showing, the trial court's failure to appoint new counsel "amounts to a denial of effective assistance of counsel." *State v. Pruitt*, 18 Ohio App.3d 50, 57, 480 N.E.2d 499 (8th Dist.1984).

{¶18} Defendant bears the burden of demonstrating grounds for the appointment of new counsel. If a defendant alleges facts which, if true, would require relief, the trial court must inquire into the defendant's complaint and make the inquiry part of the record.

*Deal* at 20.  Although the inquiry may be brief and minimal, the inquiry must be made. *State v. King*, 104 Ohio App.3d 434, 437, 662 N.E.2d 389 (4th Dist.1995).  Even that limited judicial duty arises only if the allegations are sufficiently specific; vague or general objections do not trigger the duty to investigate further.  *State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, 858 N.E.2d 1144, ¶ 68, citing *State v. Carter*, 128 Ohio App.3d 419, 423, 715 N.E.2d 223 (4th Dist.1998).

{¶19} "The decision whether or not to remove court appointed counsel and allow substitution of new counsel is addressed to the sound discretion of the trial court, and its decision will not be reversed on appeal absent an abuse of discretion."  *Id.*  The term "abuse of discretion" implies that the court's attitude is unreasonable, arbitrary or unconscionable.  *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶20} Generally, "an indigent defendant's right to counsel does not extend to counsel of the defendant's choice."  *Thurston v. Maxwell*, 3 Ohio St.2d 92, 93, 209 N.E.2d 204 (1965).  Rather, "[t]o discharge a court-appointed attorney, the defendant must show 'a breakdown in the attorney-client relationship of such magnitude as to jeopardize a defendant's right to effective assistance of counsel.'"  *State v. Coleman*, 37 Ohio St.3d 286, 292, 525 N.E.2d 792 (1988), quoting *People v. Robles*, 2 Cal.3d 205, 215, 85 Cal.Rptr. 166, 466 P.2d 710 (1970).

{¶21} Patterson points to several incidents in the record that he claims evidenced on-going problems between himself and his trial counsel, requiring the trial court to

appoint new counsel. These incidents, however, standing alone or collectively, fail to support Patterson's claim.

{¶22} The first incident involves Patterson not understanding his trial counsel's explanation of his speedy trial rights. Upon Patterson raising the issue with the court, the trial judge inquired into the situation and made it a part of the record. While Patterson's trial counsel admitted to having a "profanity-laced discussion" with Patterson over the subject, the trial court determined that Patterson was fixated on the speedy trial issue and that he simply disagreed with his counsel's advice on the issue. Indeed, the trial court made its own calculations, finding that Patterson's speedy trial argument was unfounded.

{¶23} Patterson next references other occasions in the record where he appears to try to say something during the trial proceedings. Each time, the trial judge politely reminded Patterson of the proper court procedure as follows: "He's your lawyer. Anything you want to say, talk to him and he'll present it in a motion to me or any kind of order or any kind of thing." The second instance, prior to the trial court charging the jury, Patterson asked, "Your Honor, may I say something, please?" Again the court responded, "Talk to your lawyer. I don't want you to harm yourself. You've got two lawyers there. Communicate with them and they'll communicate with me, okay?" Contrary to Patterson's assertion on appeal, we fail to see how these comments should have alerted the trial judge to appoint new counsel on Patterson's behalf.

{¶24} And while Patterson ultimately did express his blatant distrust and accused his trial attorney of threatening him, Patterson voiced this opinion after the verdict was returned. The trial court did inquire as to this accusation and determined that it was unfounded based on the testimony of the co-counsel. The trial court further determined that Patterson was employing "gamesmanship." Indeed, Patterson had previously been granted new counsel in the case prior to the start of trial. Notably, prior to the jury returning its verdict, Patterson never requested the appointment of new counsel to replace his trial counsel.

{¶25} After a thorough review of the record, we find that the trial court did not abuse its discretion. Despite the imperfect relationship between Patterson and his trial counsel, there is no evidence that Patterson's right to effective assistance of counsel was jeopardized.

{¶26} The second assignment of error is overruled.

Ineffective Assistance of Counsel

{¶27} In the third assignment of error, Patterson argues that his trial counsel was ineffective by failing to conduct meaningful voir dire examination and meaningful cross-examination of the state's DNA expert.

{¶28} To establish ineffective assistance of counsel, a defendant must show (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that but for counsel's errors, the proceeding's result would have been different. *Strickland v.*

*Washington*, 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus.

*Voir Dire*

{¶29} Patterson argues that his defense counsel exercised poor judgment in his attempts of humor and references to personal experiences and failed to attentively listen to the jurors' answers during the voir dire process. He contends that his defense counsel's demeanor sent the wrong message to the jury and compromised his case. We disagree.

{¶30} Generally, "'[c]ounsel's actions during voir dire are presumed to be matters of trial strategy.'" *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, 920 N.E.2d 104, ¶ 206, quoting *Miller v. Francis*, 269 F.3d 609, 615 (6th Cir.2001). As noted by the Ohio Supreme Court, "[w]e do not second-guess trial strategy decisions such as those made by counsel during voir dire." *State v. Adams*, 103 Ohio St.3d 508, 2004-Ohio-5845, 817 N.E.2d 29, ¶ 43.

{¶31} Initially, we cannot agree with Patterson's characterization of his trial counsel as failing to attentively listen to juror's answers. Patterson relies on one instance where his trial counsel misunderstood a single juror's earlier answer; this does not support his claim. As for Patterson's other complaint, he is attacking his trial counsel's strategy during voir dire. And while his defense counsel's strategy may differ from another attorney, we cannot say that it was deficient nor that it prejudiced him. In

fact, through the voir dire examination, Patterson's defense counsel effectively elicited answers from the jury to emphasize that the state carries the burden, that Patterson is presumed not guilty, and that witnesses may lie — all principles that favor the defense in this case.

*Cross-Examination of State's Expert DNA Witness*

**{¶32}** Patterson argues that his trial counsel was ineffective because he failed to conduct a meaningful cross-examination of the state's expert witness on the DNA results. He contends that "instead of challenging the expert's qualifications, testing methods or conclusions; defense counsel spent valuable time asking questions to 'show off' and questions about different people who worked in the lab."

**{¶33}** But the scope of cross-examination falls within the realm of trial strategy and, therefore, debatable trial tactics do not establish ineffective assistance of counsel. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 101, citing *State v. Hoffner*, 102 Ohio St.3d 358, 2004-Ohio-3430, 811 N.E.2d 48, ¶ 45. The record in this matter demonstrates that Patterson's defense counsel cross-examined the state's witness as to the potential for mistakes in the DNA analysis testing. As for his counsel not challenging the state's expert as to her qualifications, this is simply a matter of trial strategy — defense counsel may have avoided asking these questions to not further highlight the expert's qualifications. We cannot say that defense counsel was deficient, nor does Patterson demonstrate any prejudice by his defense counsel's cross-examination.

**{¶34}** The third assignment of error is overruled.

<u>Prosecutorial Misconduct</u>

**{¶35}** In the fourth assignment of error, Patterson argues that the prosecutor's questioning of witnesses and statements during closing argument amounted to prosecutorial misconduct that deprived him of a fair trial. We disagree.

**{¶36}** The standard of review for prosecutorial misconduct is whether the comments and questions by the prosecution were improper, and, if so, whether they prejudiced appellant's substantial rights. *State v. Treesh*, 90 Ohio St.3d 460, 480, 739 N.E.2d 749 (2001). Prosecutorial misconduct will not provide a basis for reversal unless the misconduct can be said to have deprived the appellant of a fair trial based on the entire record. *State v. Lott*, 51 Ohio St.3d 160, 166, 555 N.E.2d 293 (1990). "The touchstone of analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" *State v. Gapen*, 104 Ohio St.3d 358, 2004-Ohio-6548, 819 N.E.2d 1047, ¶ 92, quoting *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982).

**{¶37}** Patterson first challenges the prosecutor's questioning on direct of Officer Manson, arguing that "the prosecutor knowingly solicited from the officer the alleged victim's legal conclusion that she has been raped." The prosecutor's question to the officer, however, reveals that the prosecutor did not intentionally elicit this response. Specifically, the prosecutor asked Officer Manson as to the actions he took in response to observing what appeared to be semen in the victim's hand. Officer Manson's answer was unresponsive to the question, and the trial court therefore properly sustained Patterson's objection and granted Patterson's oral motion to strike the answer. As for

Patterson's challenge of the prosecutor's questioning the officer as to whether the victim was under the influence, we fail to see how this question was improper.

{¶38} Patterson also argues that the prosecutor's remarks during closing argument improperly referenced Patterson's failure to testify at trial. Specifically, he claims that the prosecutor stated there was "no evidence from that chair," thereby infringing on Patterson's right to remain silent. Patterson wrongly characterizes the prosecutor's statement and takes it out of context. As evidenced in the record, the prosecutor was pointing at the witness chair — not where the defendant was seated. *See State v. Hill*, 75 Ohio St.3d 195, 204, 661 N.E.2d 1068 (1996) (a prosecutor's comments should not be taken out of context and given their most damaging meaning). The prosecutor's statement rebutted Patterson's counsel's claim that this case was simply a deal gone bad and that the sexual relations was consensual. Given that the defense did not present any evidence in support of that theory, despite arguing this theory in closing, we find no fault in the prosecutor's statement.

{¶39} Lastly, Patterson argues that the prosecutor improperly elicited testimony from the nurse as to the victim's credibility by asking if the nurse believed that the victim was "fabricating" the allegations. In general, it is improper for a witness to comment on the credibility of a victim, as this determination is left exclusively to the trier of fact. *See State v. Boston*, 46 Ohio St.3d 108, 545 N.E.2d 1220 (1989); *State v. Daniels*, 8th Dist. Cuyahoga No. 92563, 2010-Ohio-899. Although we agree that the nurse's

testimony was improper, we must determine whether the testimony amounts to harmless error.

{¶40} Pursuant to Crim.R. 52(A), "[a]ny error * * * which does not affect substantial rights shall be disregarded * * *." We cannot say that the nurse's improper testimony contributed to Patterson's conviction. It is well settled that a rape conviction may rest solely on the victim's testimony, if believed, and that "[t]here is no requirement that a rape victim's testimony be corroborated as a condition precedent to conviction." *State v. Lewis*, 70 Ohio App.3d 624, 638, 591 N.E.2d 854 (4th Dist.1990). In addition to the victim's testimony, the state presented DNA evidence establishing Patterson as the perpetrator. In light of the foregoing evidence, we conclude, beyond a reasonable doubt, that the jury would have convicted Patterson even absent the improper testimony from the nurse as to the victim's credibility. *See Daniels* at ¶ 58-59 (finding detective's improper testimony as to the credibility of victim constituted harmless error in light of the evidence produced at trial in attempted rape case).

{¶41} The fourth assignment of error is overruled.

Sufficiency of the Evidence

{¶42} In his fifth assignment of error, Patterson broadly argues that the state failed to present sufficient evidence to support the convictions. We disagree.

{¶43} The gravamen of Patterson's sufficiency challenge is that the state failed to present better evidence. For example, Patterson claims that the victim could not positively identify the assailant through photographs presented, that there were no

eyewitnesses to the alleged crimes, that no one observed him in the immediate area of the alleged assault, and that the police never obtained a confession. Patterson, however, confuses the standard for a sufficiency challenge.

**{¶44}** The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. When an appellate court reviews a record upon a sufficiency challenge, "'the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. Applying this standard, the state clearly met its burden of production.

**{¶45}** Here, the victim's testimony and the DNA evidence were sufficient to support the convictions and withstand a Crim.R. 29 motion for an acquittal. The DNA evidence directly linked Patterson as the perpetrator.

**{¶46}** The fifth assignment of error is overruled.

Manifest Weight of the Evidence

**{¶47}** In the sixth assignment of error, Patterson argues that the convictions are against the manifest weight of the evidence.

**{¶48}** When an appellate court analyzes a conviction under the manifest weight standard, it must review the entire record, weigh all of the evidence and all of the

reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the factfinder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Under a manifest weight standard, an appellate court sits as a "thirteenth juror" and may disagree with the factfinder's resolution of the conflicting testimony. *Id.* Although the appellate court may act as a thirteenth juror, it should give due deference to the findings made by the factfinder. *Id.* at 388. Only in exceptional cases, where the evidence "weighs heavily against the conviction," should an appellate court overturn the trial court's judgment. *Id.*

{¶49} Patterson argues that the jury lost its way believing the victim's testimony. He contends that the victim's history of prostitution and drug abuse rendered her testimony wholly unbelievable. But it is a function of the jury to determine the credibility of the victim's testimony. *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). As the Second District has explained:

> [B]ecause the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness.

*State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 Ohio App. LEXIS 3709 (Aug. 22, 1997).

{¶50} Based on the record in this case, we cannot say that the jury lost its way. Contrary to Patterson's speculation, there is no evidence that the victim and Patterson engaged in a consensual sexual act involving a deal gone bad. Nor was there any evidence that the victim was under the influence. To the contrary, Officer Manson testified that the victim did not appear to be under the influence when he found her. While the victim was a recovering addict and had a history of prostitution, these facts, however, do not require the jury to disregard the victim's testimony.

{¶51} The sixth assignment of error is overruled.

### Cumulative Error

{¶52} In the seventh assignment of error, Patterson argues that the trial court committed critical errors in the trial by (1) allowing the admission of improper hearsay evidence, and (2) permitting both prosecutors to question prospective jurors during the voir dire process. He claims that the cumulative effect of these two errors deprived him of a fair trial. His argument lacks merit.

{¶53} First, Adcox's testimony as to what the victim stated happened was properly admitted as an excited utterance — an exception to hearsay rule. Under Evid.R. 803(2), an excited utterance is defined as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." The testimony revealed that Adcox observed the victim running down the street and that the victim was crying, shaking, and "a little bit hysterical" when the victim told Adcox what happened to her. Under these circumstances, we find that the victim's

statement to Adcox, immediately following the attack, constituted an excited utterance, and was therefore properly admitted as an exception to the hearsay rule. *See Cleveland v. Arnold*, 8th Dist. Cuyahoga No. 98693, 2013-Ohio-1791, ¶ 22 (recognizing that an excited utterance is an exception to the hearsay rule and properly admissible).

**{¶54}** Secondly, there is no rule of law prohibiting two prosecutors from participating in the voir dire process. Indeed, Patterson never objected to the two prosecutors both posing questions to the prospective jurors at the trial court level. Further, Patterson fails to cite any authority in support of his argument.

**{¶55}** Having found no error, let alone cumulative error, we overrule the seventh assignment of error.

### Allied Offenses

**{¶56}** In his eighth assignment of error, Patterson argues that the trial court should have merged the kidnapping charge in Count 5 with the other counts because there was no separate animus. Under Count 5, Patterson was convicted of kidnapping, in violation of R.C. 2905.01(A)(3), which provides in relevant part,

> No person, by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
>
> * * *
>
> (3) To terrorize, or to inflict serious physical harm on the victim of another
>
> * * *.

{¶57} In *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, the Ohio Supreme Court established the proper analysis for determining whether offenses qualify as allied offenses subject to merger pursuant to R.C. 2941.25:

> In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense and commit the other with the same conduct, not whether it is possible to commit one without committing the other. * * * If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import.

> If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., "a single act, committed with a single state of mind." [*State v.*] *Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, at ¶ 50 (Lanzinger, J., dissenting).

> If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged.

> Conversely, if the court determines that the commission of one offense will never result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge.

(Emphasis sic.) *Id.* at ¶ 48-51.

{¶58} Our review of an allied offenses question is de novo. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 28.

{¶59} The trial court found that the rape and kidnapping charges in Count 1 and Count 2 merged but found that kidnapping in violation of R.C. 2905.01(A)(3) as contained in Count 5 did not. The critical question in this case is whether Patterson committed the kidnapping with the same animus or a separate one to the other counts.

We agree with the trial court that a separate animus existed for the second count of kidnapping, and therefore it did not merge.

{¶60} In *State v. Logan*, 60 Ohio St.2d 126, 397 N.E.2d 1345 (1979), syllabus, the Ohio Supreme Court set forth the following test to determine what constitutes a separate animus for kidnapping and a related offense. Specifically, the court stated:

> In establishing whether kidnapping and another offense of the same or similar kind are committed with a separate animus as to each pursuant to R.C. 2941.25(B), this court adopts the following guidelines:
>
> (a) Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions;
>
> (b) Where the asportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime, there exists a separate animus as to each offense sufficient to support separate convictions.

*Id.*

{¶61} Here, F.B. testified as to the specific conduct of Patterson following the rape and robbery, evidencing a separate animus to further terrorize her. According to F.B., Patterson specifically instructed her to get off the chair, go to the back of the garage, and kneel down. F.B. testified that she did not do that in fear that Patterson would shoot her. She begged for him not to hurt her. Patterson responded by pointing the gun at her and

told her to count to 100 and not to open the garage door until she reached 100. These actions all occurred after Patterson had already forced F.B. into the abandoned garage, demanded her money and cell phone, forced her to perform oral sex, and ejaculated into her mouth. These actions therefore evidence a prolonged restraint as well as an increased risk of harm to the victim that supports the trial court's finding of a separate animus.

{¶62} The eighth assignment of error is overruled.

Consecutive Sentences

{¶63} In his final assignment of error, Patterson argues that the trial court erred in imposing maximum consecutive sentences in Counts 1, 3, and 6 in the underlying case and Count 1 in Case No. CR-13-572226 — the case that Patterson was indicted on while this case was pending. He argues that the record does not support the imposition of such a sentence. We disagree.

{¶64} R.C. 2953.08(G)(2) states that when reviewing felony sentences, "[t]he appellate court's standard for review is not whether the sentencing court abused its discretion." Rather, the statute states that if we "clearly and convincingly" find that (1) "the record does not support the sentencing court's findings under [R.C. 2929.14(C)(4)]," or that (2) "the sentence is otherwise contrary to law," then we "may increase, reduce, or otherwise modify a sentence * * * or [we] may vacate the sentence and remand the matter to the sentencing court for re-sentencing." R.C. 2953.08(G)(2).

{¶65} R.C. 2929.14(C)(4) requires trial courts to engage in a three-step analysis in

order to impose consecutive sentences. First, the trial court must find that "consecutive service is necessary to protect the public from future crime or to punish the offender." *Id*. Next, the trial court must find that "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." *Id*. Finally, the trial court must find that at least one of the following applies: (1) the offender committed one or more of the multiple offenses while awaiting trial or sentencing, while under a sanction, or while under postrelease control for a prior offense; (2) at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct; or (3) the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender. *Id*.

{¶66} The record before us reveals that the trial court made all the necessary findings to support the imposition of consecutive sentences. Further, the record further reveals that the trial judge considered the appropriate factors in R.C. 2929.11 and 2929.12 in imposing a maximum prison term on Counts 1, 3, and 6, as well as the single count in Case No. CR-13-572226. Indeed, although not required, the trial judge specifically stated on the record his consideration of the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the serious and recidivism factors set forth in R.C. 2929.12. Specifically, the trial judge noted the enormous "psychological pain" inflicted upon the

victim, the lack of any mitigating factors, the lack of remorse, and the high concern of recidivism. With respect to Case No. CR-13-572226, the trial court stated:

It's a felony of a third degree. This is the taking of a spoon and making a shank out of the spoon — or making it a knife out of the spoon. This court, I don't care what you were thinking about that. That was dumb, stupid, while waiting to be tried in this case, you did that.

**{¶67}** Based on the record before us, we find that Patterson's sentence is not clearly and convincingly contrary to law and that the trial court made the required findings to support the imposition of consecutive sentences.

**{¶68}** The final assignment of error is overruled.

**{¶69}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, ADMINISTRATIVE JUDGE

FRANK D. CELEBREZZE, JR., J., and

EILEEN T. GALLAGHER, J., CONCUR