[Cite as *State v. Hall*, 2025-Ohio-2153.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,            :

                                              No. 114539

    v.                             :

DEVIN HALL,                             :

    Defendant-Appellant.           :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 18, 2025

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-22-670428-B

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Anna M. Faraglia, Assistant Prosecuting Attorney, *for appellee.*

P. Andrew Baker, *for appellant.*

MARY J. BOYLE, P.J.:

{¶ 1} Defendant-appellant, Devin Hall ("Hall"), appeals his convictions following his guilty plea to one count of involuntary manslaughter and two counts of child endangering, contending that the trial court should have appointed new

counsel to argue his pro se motion to withdraw his guilty plea.  Finding no merit to Hall's argument, we affirm.

## I.  Facts and Procedural History

{¶ 2}  Hall and his codefendant, Dyneshia Anderson ("Anderson"), were charged in connection with the abuse of Anderson's three-year-old nephew ("brother") and the abuse and murder of Anderson's four-year-old nephew ("victim").  Hall and Anderson lived together with their two girls and fostered Anderson's nephews.  The following is a brief summary of the facts gleaned from the record.

{¶ 3}  On May 5, 2022, Euclid police responded to an apartment complex on East 260th Street for a report of an unresponsive child.  Upon arrival, officers observed the victim, a four-year-old boy, laying on his back wearing blue pants with no shirt.  The victim was not breathing and had a piece of duct tape wrapped around his forehead covering a gash.  The victim had several bruises on his chest, arms, and face.  While administering CPR, the officer noticed several older injuries as well.  Anderson was on scene and claimed that the victim snuck out of the apartment and fell down a flight of stairs.  She attributed the various other injuries to repeated falls down the stairs and being attacked by a dog.  The victim was transported to the hospital where he died soon after arrival.

{¶ 4}  Hall and the couple's oldest daughter were not home when police arrived.  The victim's brother was in a bedroom with the couple's five-year-old

daughter. The brother was observed to be emaciated and covered in welts and bruises like the victim, but the couple's daughter appeared healthy and unharmed.

{¶ 5} While police were on scene, Hall and Anderson spoke several times on the telephone. During one call, Hall was overheard by police to have instructed Anderson to tell the police that he did it. When Hall arrived on scene, he told police that he was rarely home, that some of the marks may be from Anderson spanking the victim, and that the rest of the injuries were the boys acting like boys.

{¶ 6} When Hall was interviewed by police, he blamed the victim, claiming he was the aggressor and would throw temper tantrums when he did not get his way. Hall expressed his irritation with the two boys' behavior but denied physically disciplining the boys. He did, however, confirm that the victim was struck by several objects including a combination lock, a belt with a square buckle, and a hanger.

{¶ 7} According to the medical examiner, on the day of his death, the victim suffered from a skull fracture with injuries to both sides of his brain and several broken ribs. It was determined that the victim died from blunt force trauma to his head, trunk, and extremities. The fatal injuries were consistent with being punched, "pounded on[,] or stomped on." (Tr. 67.) The medical examiner also indicated that within a few days of the victim's death, he suffered a lacerated liver that was bleeding internally. In addition, over 100 other marks, scars, abrasions, bruises and injuries in various stages of healing were documented. According to the medical examiner, many of the injuries were consistent with the objects Hall indicated were used to strike the victim. At the hospital, the brother was observed to have suffered multiple

bruises and abrasions to his body and face and a swollen left eye, as well as cigarette burns on his back.

{¶ 8} Hall and Anderson were charged in an 11-count indictment that included one count of aggravated murder of a child under 13; one count of murder; one count of felony murder; two counts of felonious assault; and six counts of endangering children. Anderson pled guilty to one count of felony murder, an unclassified felony; one count of felonious assault, a second-degree felony; and one count of endangering children, a third-degree felony. She was sentenced to 18 years to life in prison.[1] Hall pled guilty to one count of involuntary manslaughter, a first-degree felony, and two counts of endangering children, one second-degree felony and one third-degree felony. As part of the plea agreement, Hall agreed to a sentencing range of 15 to 20 years, not including the Reagan Tokes indefinite sentence, and that the offenses were not allied.

{¶ 9} Prior to sentencing, Hall filed a pro se motion to withdraw his guilty plea. At the sentencing hearing, the trial court inquired about Hall's pro se motion. Hall's counsel stated to the court that "[t]he court was in compliance with [Crim.] Rule 11 [at the time of the plea]. And to our knowledge there's nothing under Criminal Rule 32 that would suggest as officers of the court that we could endorse this [motion]." (Tr. 61.) A discussion was held off the record, and then Hall

---

[1] As of the date of this appeal, Anderson has not challenged her conviction.

withdrew his motion.  Thereafter, Hall was sentenced to 16 years to 21½ years in prison and up to five years of mandatory postrelease control.[2]

{¶ 10} Hall now appeals, raising one assignment of error for review for our review:

> **Assignment of Error:**  The trial court erred when it did not appoint new counsel to address [Hall's] pro se motion to withdraw his plea.

## II.  Law and Analysis

{¶ 11} In Hall's sole assignment of error, he essentially asserts that the trial court erred by not, sua sponte, appointing new counsel to address Hall's pro se motion to withdraw his guilty plea because Hall's attorneys had an inherent conflict with arguing the motion.  On appeal, "'[w]e review a trial court's decision whether to remove court-appointed counsel for an abuse of discretion.'" *State v. Robinson*, 2018-Ohio-285, ¶ 7 (8th Dist.), quoting *State v. Pendergrass*, 2017-Ohio-2752, ¶ 15 (8th Dist.), citing *State v. Patterson*, 2014-Ohio-1621, ¶ 19 (8th Dist.).  An abuse of discretion occurs when a court exercises its judgment in an unwarranted way regarding a matter over which it has discretionary authority.  *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

{¶ 12} Hall relies on *State v. Foreman*, 2015-Ohio-2259 (1st Dist.), in support of his position that he should have been assigned new counsel to argue his

---

[2] The trial court sentenced Hall to 11-16½ years in prison on the involuntary manslaughter charge; 5 years on the felony two endangering children charge; and 36 months on the felony three endangering children charge.  The endangering children sentences were ordered to be served concurrently but consecutive to the involuntary manslaughter sentence, for a total of 16-21½ years.

motion to withdraw guilty plea. In *Foreman*, the defendant, through counsel, filed a motion to withdraw his guilty plea claiming, among other things, that his attorneys had not been totally honest with him. *Id.* ¶ 3. The trial court denied Foreman's motion after hearing from Foreman and his attorney who disagreed with Foreman's assessment of his representation. *Id.* ¶ 3-4. On appeal, Foreman argued that he received ineffective assistance of counsel. The First District Court of Appeals agreed, reversing and remanding the decision of the trial court, finding that Foreman's attorney had an interest adverse to his client's and thus ineffective assistance of counsel was presumed. *Id.* ¶ 8. *Foreman*, however, is not binding precedent on this district and is distinguishable, and we decline to follow it here.[3]

{¶ 13} As this court explained in *Robinson*, the defendant bears the burden of demonstrating grounds for the appointment of new counsel. *Id.* at ¶ 11. If a defendant alleges facts that, if true, would require appointment of new counsel, only then must the trial court inquire into the claims and make the inquiry part of the record. *Patterson* at ¶ 18, citing *State v. Deal*, 17 Ohio St.2d 17, (1969).

{¶ 14} Furthermore, it is well-settled that a criminal defendant has the right to counsel or the right to act pro se; however, a defendant does not have the right to "hybrid representation." *State v. Smith*, 2022-Ohio-3231, ¶ 36 (8th Dist.), citing *State v. Mongo*, 2015-Ohio-1139, ¶ 13, (8th Dist.), citing *State v. Martin*, 2004-Ohio-5471, paragraph one of the syllabus; *State v. Thompson*, 33 Ohio St.3d 1, 6-7

---

[3] We also note that the *Foreman* decision has not been cited by any court since it was decided ten years ago.

(1987). The Ohio Supreme Court defined hybrid representation as a combination of pro se representation along with the assistance of counsel. *Thompson* at 6-7. The right to counsel and the right to act pro se "'are independent of each other and may not be asserted simultaneously.'" *Smith* at ¶ 36, quoting *Martin* at paragraph one of the syllabus. Therefore, when a criminal defendant is represented by counsel, a trial court may not entertain a pro se motion filed by the defendant. *Id.* citing *State v. Washington*, 2012-Ohio-1531, ¶ 11 (8th Dist.). Finally, "[w]hen a criminal defendant is represented by counsel and counsel does not join in the defendant's pro se motion or otherwise indicate a need for the relief sought by the defendant pro se, the trial court cannot properly consider the defendant's pro se motion." *State v. Smith*, 2017-Ohio-8558, ¶ 32 (1st Dist.).

{¶ 15} In the instant case, Hall filed a pro se motion to withdraw his guilty plea, claiming that he "received new information that purportedly demonstrated his innocence and establishes a reasonable and legitimate basis for him to withdraw his plea." (Motion, Oct. 8, 2024.) He alleged that counsel withheld this information from him in violation of his constitutional rights. Hall, however, did not include in his motion the "new information" he now possessed that somehow exonerated him. At the sentencing hearing on October 22, 2024, the trial court addressed Hall's pro se motion to withdraw his guilty plea. Hall's counsel did not join the motion, stating to the court that there was no basis in law for the withdrawal of plea. Thereafter, a discussion was held off the record that concluded with Hall stating that "I accept the time and the negotiations." (Tr. 61.) Hall's counsel then withdrew Hall's pro se

motion. Before allowing the withdrawal, the trial court specifically asked Hall, "Is it true, Mr. Hall, you want to withdraw that motion?" Hall replied, "Yes, your honor." (Tr. 61.) Thereafter, the court proceeded with sentencing as scheduled.

{¶ 16} A review of the record reveals that Hall did not set forth facts that, if true, would require the appointment of new counsel. Moreover, Hall did not request new counsel nor did he express his desire to proceed pro se on his motion. Rather, Hall withdrew his motion. As a result, there was no reason for the trial court to, sua sponte, appoint him new counsel. Furthermore, this case is not a whodunit, but rather who was the worse actor. Here, the trial court was in possession of the Mitigation of Penalty Evaluation and Presentence Investigation Report, which detailed Hall's statements to police where it was obvious that Hall knew and participated in the abuse that eventually led to the victim's death and the brother's injuries. In these statements, Hall expressed his irritation with the victim and told police that the victim was the aggressor of the house, throwing temper tantrums when he did not get his way. At one point, Hall blamed the three-year-old brother for the victim's injuries. Although Hall claimed that he did not discipline the victim, he acknowledged that the victim had been struck with various objects. These objects were consistent with the numerous injuries sustained by the victim.

{¶ 17} Contrary to Hall's assertions, none of the information in front of the trial court lent itself to the conclusion that Hall was innocent, that counsel withheld exculpatory information from their client, or that Hall would not have been aware of this information at the time of plea. Further, there is no evidence that Hall's

counsels' interests were adverse to Hall. In fact, they successfully negotiated a substantial reduction from a possible life sentence for him. Indeed, there is nothing in the record indicating that the trial court exercised its judgment in an unwarranted way. Thus, based on the foregoing, we find that the trial court did not abuse its discretion when it did not, sua sponte, appoint new counsel for Hall.

{¶ 18} Accordingly, Hall's sole assignment of error is overruled.

{¶ 19} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The appellant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
KATHLEEN ANN KEOUGH, J., CONCUR