[Cite as *State v. Price*, 2015-Ohio-411.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 100981

---

## STATE OF OHIO

### PLAINTIFF-APPELLEE

vs.

## TERRELL A. PRICE

### DEFENDANT-APPELLANT

---

### JUDGMENT:
### AFFIRMED IN PART, REVERSED IN PART
### AND REMANDED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-13-577236-A

**BEFORE:** Keough, J., Boyle, P.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** February 5, 2015

**ATTORNEY FOR APPELLANT**

Thomas A. Rein
Leader Building, Suite 940
526 Superior Avenue
Cleveland, Ohio 44114

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
By: Edward R. Fadel
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

KATHLEEN ANN KEOUGH, J.:

{¶1} Defendant-appellant, Terrell A. Price, appeals his convictions. For the reasons that follow, we affirm, but remand the case to the trial court for the limited purpose of addressing court costs.

{¶2} In September 2013, Price was charged with two counts of drug trafficking in violation of R.C. 2925.03(A)(2), two counts of drug possession in violation of R.C. 2925.11(A), and one count of possessing criminal tools, to wit: a scale, money, and an iPad, in violation of R.C. 2923.24(A). Each count sought forfeiture of money, a scale, and an iPad.

{¶3} After indictment, Price was represented by retained counsel until counsel requested to withdraw. The trial court granted counsel's request on the day that trial was scheduled. After a finding of indigency, the court appointed an attorney from the public defender's officer to represent Price. The case was continued for trial until January 6, 2014. However, on the day of trial, newly retained counsel appeared on Price's behalf. After the trial court denied Price's request for substitution of counsel, Price indicated he wanted to represent himself at trial. The trial court engaged in a lengthy discussion with Price about this decision. As a result of this discussion, Price proceeded to trial with his appointed attorney.

{¶4} After trial commenced and during cross-examination of the state's first witness, Price again indicated that he wanted to represent himself. The trial court again engaged in a lengthy discussion with Price. This time, the court granted Price's request, but appointed the public defender as Price's legal advisor. The trial continued and the jury heard the following evidence.

{¶5} Lead investigator, Detective John Guzik, testified that Price became the subject of a drug trafficking investigation in March 2013. As part of that investigation he established a team

that conducted surveillance of Price's residence at the Jamestown Village Apartments in North Olmsted. During this surveillance, Price was seen driving various vehicles that were all rental cars, which, according to Detective Guzik, is an indicator of drug trafficking. Detective Guzik testified that as a result of their investigation, they obtained a search warrant to search Price's residence.

{¶6} On July 15, 2013, Detective Guzik, along with Special Agent Brad Schultz and Detective Amelio Leanza, observed Price drive into the parking lot at his apartment building. They approached Price and presented him with the search warrant to search his apartment. After advising Price of his *Miranda* rights, the officers searched his vehicle and discovered a roll of money in the center console next to a pack of cigarettes. Inside the exterior plastic of the cigarette pack was a bag of suspected cocaine. Price was placed under arrest.

{¶7} According to Detective Guzik, Price appeared dejected and stated that his "life was over." Detective Guzik testified that Price was very cooperative with the officers, including giving the officers the key to his apartment so that the officers could execute the search warrant. During the search, Agent Schultz located in the top kitchen cabinet a box of sandwich bags, a bag of suspected cocaine, and a scale with suspected cocaine residue on their surface. Agent Schultz stated that based on his training and experience, the amount of cocaine discovered in the kitchen was an amount that indicates it was for sale or distribution. Furthermore, because the cocaine was still in a hard solid state, it was indicative that the amount was directly from a supplier.

{¶8} Field tests confirmed that the contents inside the bags and the residue on the scale was cocaine. The parties stipulated that 3.54 grams of cocaine was recovered from Price's vehicle, and 36.01 grams of cocaine was recovered from the kitchen cabinet.

{¶9} Also discovered at the residence were personal documents and mail belonging to Price. The mail consisted of electric bills addressed to Price at the North Olmsted address, but also court and personal documents addressed to Price at a Lakewood address. The officers also observed in the closet clothing that Price was seen wearing during the five-month surveillance period.

{¶10} The following day after Price was arrested, Detectives Guzik and Leanza interviewed Price. The jury heard that during this interview Price admitted that the seized drugs, money, and scale discovered in his vehicle and apartment belonged to him. Detective Guzik testified that Price admitted to purchasing 42 grams of cocaine on July 14, 2013, the day before his arrest. According to Detective Leanza, Price also admitted to selling cocaine. Detective Leanza admitted that this interview was not audio or video recorded and was not memorialized in writing.

{¶11} After Price indicated that he would assist the officers with a controlled buy, Price was released from jail and escorted back to his apartment in North Olmsted to change his clothes. Detective Guzik testified that they then left on Price's motorcycle to make a purchase.

{¶12} Detective Guzik further testified that he was aware that Price was not the lease holder of the North Olmsted apartment; however, he stated that there was nothing inside the apartment to indicate that any person other than Price lived there, including an individual named Carl Wiley. Additionally, he testified that during their surveillance of the apartment building, no other male was ever seen entering or exiting the apartment.

{¶13} Following the close of the state's case, Price exercised his right not to testify. The jury found Price guilty of all counts and found that only the scale and money were subject to

forfeiture. Price was sentenced to a total of 11 years in prison with a mandatory term of five years of postrelease control.

{¶14} Price appeals, raising eight assignments of error.

## I. Right to Counsel

{¶15} In his first assignment of error, Price contends that the trial court denied him his Sixth Amendment right to counsel by refusing to allow Price's retained counsel to enter an appearance and "forcing [him] to go to trial court counsel whose services [he] had repeatedly tried to terminate and that [he] ultimately had to represent himself."

{¶16} The right to counsel of one's choice is an essential element of the Sixth Amendment right to have the assistance of counsel for one's defense. *State v. Keenan*, 8th Dist. Cuyahoga No. 89554, 2008-Ohio-807. The right is not absolute, however, and courts have "wide latitude in balancing the right to counsel of choice against the needs of fairness and against the demands of its calendar." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 152, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006). Thus, "[w]hile the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate * * * rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Id*. Furthermore, the Sixth Amendment does not guarantee "rapport" or a "meaningful relationship" between client and counsel. *State v. Henness*, 79 Ohio St.3d 53, 65, 679 N.E.2d 686 (1997), citing *Morris v. Slappy*, 461 U.S. 1, 13-14, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983).

{¶17} Thus, "[a] defendant has only a presumptive right to employ his own chosen counsel." *State v. Keenan*, 81 Ohio St.3d 133, 137, 689 N.E.2d 929 (1998). Factors to consider in deciding whether a trial court erred in denying a defendant's motion to substitute counsel

include "the timeliness of the motion; the adequacy of the court's inquiry into the defendant's complaint; and whether the conflict between the attorney and client was so great that it resulted in a total lack of communication preventing an adequate defense." *United States v. Jennings*, 83 F.3d 145, 148 (6th Cir.1996). In addition, courts should "balance * * * the accused's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice." *Id*.

{¶18} Further, when the timing of a request for new counsel is an issue, a trial court may make a determination as to whether the appellant's request for new counsel was made in bad faith. *State v. Graves*, 9th Dist. Lorain No. 98CA007029, 1999 Ohio App. LEXIS 5992 (Dec. 15, 1999). A motion for new counsel made on the day of trial "intimates such motion is made in bad faith for the purposes of delay." *State v. Haberek*, 47 Ohio App.3d 35, 41, 546 N.E.2d 1361 (8th Dist.1988). Therefore, decisions relating to the substitution of counsel are within the sound discretion of the trial court. *Wheat v. United States*, 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988).

{¶19} After indictment, Price was represented by retained counsel who engaged in discovery and pretrial negotiations; trial was scheduled for November 2013. However, on the day of trial, the court granted counsel's request to withdraw, appointed an attorney from the public defender's office, and continued the trial date.

{¶20} Newly appointed counsel again requested discovery, engaged in pretrial negotiations, requested the state to disclose the identity of the confidential informant, and further moved the trial court to compel the state to provide video recordings and other pertinent information obtained during the five-month investigation. Additionally, counsel also requested,

at the direction of Price, independent testing on the drugs recovered. Trial was scheduled for January 2014.

{¶21} Again, on the day of trial, newly retained counsel appeared on Price's behalf. The attorney explained to the court that he was approached the night before to represent Price in this case, and if allowed to represent him, he would need a continuance of the trial. After engaging in a lengthy discussion with Price, appointed counsel, newly retained counsel, and the state, the trial court concluded that this request was just a delay tactic by Price, and thus, denied Price's request for substitution of counsel.

{¶22} After a thorough review of the record, we find the trial court's denial of substitution of counsel was not unreasonable because the record supports that Price's day-of-trial request was made for the purposes of delay. Price made unsupported claims that appointed counsel had refused to communicate with him and the motions that Price indicated that his counsel refused to file were legally futile or were contrary to his defense.

{¶23} Accordingly, we find no abuse of discretion in the trial court's refusal to substitute retained counsel for his court-appointed counsel. Price's first assignment of error is overruled.

## II. Psychological Evaluation

{¶24} Immediately after the trial court denied his request for substitution of counsel, Price moved, pro se, for a psychological evaluation; the written motion was subsequently filed two days later. He orally stated to the court that the basis for the request was because he wanted "to stand trial myself." He further indicated that if the trial court was not going to allow his retained counsel to represent him, he wanted to represent himself. The trial court denied his request for a psychological evaluation finding that his was another attempt to delay his trial.

**{¶25}** In his second assignment of error, Price contends that his rights were violated when he was convicted although he was denied by the trial court to have a psychological evaluation.

**{¶26}** When the defendant's competence to stand trial is raised, the trial court is required to hold a hearing under R.C. 2945.37(B). R.C. 2945.37(G) provides:

> A defendant is presumed to be competent to stand trial. If, after a hearing, the court finds by a preponderance of the evidence that, because of the defendant's present mental condition, the defendant is incapable of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense, the court shall find the defendant incompetent to stand trial and shall enter an order authorized by section 2945.38 of the Revised Code.

**{¶27}** While the trial court was required to hold a hearing regarding Price's competency to stand trial, it had the discretion to order a mental evaluation based upon the evidence submitted. R.C. 2945.371(A).

**{¶28}** In this case, Price filed a written request for a psychological evaluation "to see if he's competent to stand trial." His request did not identify or specify any mental condition that would prevent him from being capable of understanding the nature and objective of the proceedings against him or of assisting in his own defense. Moreover, at the time that Price orally argued his motion, he made no argument that he did not understand the nature of the charges against him, the trial process, possible punishment, or that he was incapable of assisting in his defense. Rather, he kept repeating that he needed more "stuff" for his case and that he did not have "everything" for trial.

**{¶29}** As the trial court recognized when it denied Price's request, Price's competency to stand trial was never questioned throughout the entire case, and the record supports that Price was very competent during all the stages of the proceedings, including his recitation of the law in addressing pretrial issues. Only after the court indicated it was denying the request because

Price failed to demonstrate he did not understand the nature of the proceedings, did Price state that he had "issues on [his] brain" that he never resolved, including the death of loved ones. The court stated these issues could be used for mitigation if he was convicted. A thorough review of the record supports the trial court's decision that Price's request for a psychological evaluation was clearly another attempt to delay trial.

{¶30} Accordingly, we find that the trial court did not abuse its discretion in denying Price's pro se request for a psychological evaluation. The assignment of error is overruled.

### III. Sufficiency of the Evidence

{¶31} Price raises as his third assignment of error that the trial court erred in denying his motion for acquittal as to the charges when the State failed to present sufficient evidence to sustain a conviction. Specifically, he contends that no evidence was presented that he actually resided at the North Olmsted address. We disagree.

{¶32} The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶33} In this case, Price was convicted of drug trafficking, drug possession, and possession of criminal tools. Notwithstanding that the officers testified that Price admitted that

the drugs, money, and scale discovered in his car and apartment belonged to him, the jury heard additional evidence establishing that Price resided at the North Olmsted apartment.

{¶34} Detective Leanza, Special Agent Schultz, and Detective Guzik all testified that they conducted surveillance of the North Olmsted address and observed Price entering and exiting the apartment building over the course of five months. Additionally, on the day that Price was arrested, the officers gained access to the apartment with the key found on Price's key chain that was in his possession. Furthermore, during the search of the apartment, the officers discovered mail addressed to Price containing the North Olmsted address. Finally, the officers observed clothing in the apartment that Price was seen wearing during the course of their investigation.

{¶35} Accordingly, viewing the evidence in the light most favorable to the prosecution, sufficient evidence was presented to support that Price resided at the North Olmsted apartment. His assignment of error is overruled.

IV. Manifest Weight of the Evidence

{¶36} In his fourth assignment of error, Price contends that his convictions are against the manifest weight of the evidence because the evidence does not prove that he knowingly committed the crimes.

{¶37} "'A manifest weight challenge, on the other hand, questions whether the prosecution met its burden of persuasion.'" *State v. Ponce*, 8th Dist. Cuyahoga No. 91329, 2010-Ohio-1741, ¶ 17, quoting *State v. Thomas*, 70 Ohio St.2d 79, 80, 434 N.E.2d 1356 (1982). The manifest-weight-of-the-evidence standard of review requires us to review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new

trial ordered. *State v. Otten*, 33 Ohio App.3d 339, 515 N.E.2d 1009 (9th Dist.1986), paragraph one of the syllabus. The discretionary power to grant a new trial should be exercised only in exceptional cases where the evidence weighs heavily against the conviction. *Thompkins*, 78 Ohio St.3d at 386, 678 N.E.2d 541.

{¶38} In this case, the evidence was overwhelming considering that Price admitted that the drugs were his, he was in possession of cocaine at the time of arrest, and the investigation revealed that he resided at the North Olmsted apartment where a large quantity of cocaine and criminal tools were discovered.

{¶39} Although Price maintained that "Carl Wiley" was the actual lease holder of the apartment, and that Price did not reside there but merely visited and helped a friend with the bills, the jury was free to "believe or disbelieve any witness or accept part of what a witness says and reject the rest." *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964). Moreover, the fact that Price provided the factfinder with an alternative version of the events does not automatically lead to the conclusion that this conviction was against the manifest weight of the evidence. *See, e.g., State v. Whitsett*, 8th Dist. Cuyahoga No. 101182, 2014-Ohio-4933.

{¶40} Accordingly, we cannot say that the jury lost its way in finding Price guilty, and we find that this is not the "exceptional case in which the evidence weighs heavily against the convictions" where a new trial should be ordered. *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541.

{¶41} Price's assignment of error is overruled.

V.  Right to Remain Silent

{¶42} In his fifth assignment of error, Price contends that he was denied a fair trial due to the trial court commenting on his failure to testify and giving the jury a specific instruction to

that effect. Our reading of the transcript reveals that the trial court's comments did not allow the jury to consider Price's right to remain silent as evidence of guilt. Rather, the court's additional instructions were presented to remind the jury that they could only consider the evidence presented and not Price's unsworn factual representations made during his closing argument.

{¶43} Throughout the entire trial Price repeatedly interjected his own testimony to rebut the answers given during his cross-examination of the state's witnesses. Furthermore, the record shows after Price indicated that he was not going to testify, the court instructed Price that his closing arguments should only address the evidence that was presented.

{¶44} After the jury received its general instructions, but before closing arguments, the trial court instructed the jury that "[c]losing arguments are not evidence. They are designed to assist you. It's an opportunity for the parties to stand before you and state what they believe the evidence proved or did not prove in this case." (Tr. 623.)

{¶45} During his closing argument, Price repeatedly made references to situations and facts that were not in evidence. The trial court at one point interjected during Price's closing that he could only comment on facts in evidence, and he could not comment on facts not in evidence. When Price ignored this instruction, the trial court was compelled to intervene and give a more in-depth instruction that the jury could only consider the evidence and testimony they heard during the trial. We find that the trial court's instruction was carefully crafted to protect Price's constitutional right to remain silent, while reminding the jury of the state's burden of proof, and to afford both parties a fair trial.

{¶46} Additionally, it must be noted that during the state's rebuttal argument, it did not comment on Price not testifying, but only commented that some of the statements Price made

during closing argument were not evidence. The state's rebuttal reminded the jury to only consider the evidence and testimony that was presented by the witnesses.

{¶47} In *State v. Glasure*, 7th Dist. Carroll No. 724, 2000 Ohio App. LEXIS 2541 (May 23, 2000), the Seventh District considered a similar circumstance. Throughout the presentation of the state's case, the defendant continually attempted to interject his own testimony. The court found that the record was clear that when it came time for the defendant to make a closing argument, he intended on testifying without the attendant responsibilities of taking an oath or subjecting himself to cross-examination. The court held that allowing the defendant to testify in this instance would have been beyond what is allowed in closing argument. Therefore, the court determined that the trial court did not abuse its discretion when it cut short the defendant's attempt to make a closing argument.

{¶48} Much like in *Glasure*, Price's closing, as a whole, was a roundabout way of testifying without being subject to cross-examination. While the trial court did instruct the jury prior to closing arguments that closing arguments are not evidence, the trial court's decision to give a further instruction about closing arguments was not an abuse of discretion, where the record shows that Price repeatedly mischaracterized the evidence and discussed facts not in evidence.

{¶49} Accordingly, Price's fifth assignment of error is overruled.

VI. Consecutive Sentences

{¶50} In his sixth assignment of error, Price contends that the trial court erred by ordering him to serve a consecutive sentence without making the appropriate findings required by R.C. 2929.14 and H.B. 86.

**{¶51}** In this case, the trial court sentenced Price to 11 years on Count 1, one-year on Count 3, and one-year on Count 5. All sentences were ordered to run concurrent. The trial court did not order consecutive sentences in this case.

**{¶52}** We take judicial notice that Price was found to be in violation of his probation in case number CR-10-540882 and was ordered to serve three-years in prison. In that case, the court ordered the sentence to be served "consecutive to CR-13-577236," which is the case this court is considering on appeal. Price did not appeal his sentence in CR-10-540882, which includes the imposition of the consecutive sentence, therefore, we do not have jurisdiction to consider this assignment of error. The only journal entry appealed from was that of case CR-577236, which did not contain consecutive sentences.

**{¶53}** Accordingly, the assignment of error is overruled for lack of jurisdiction.

## VII. Court Costs

**{¶54}** In his seventh assignment of error, Price challenges the trial court's journal entry ordering him to pay court costs because court costs were not ordered or addressed in open court at the time of sentencing. Price contends this error renders his entire sentence void. Based on *State v. Joseph*, 125 Ohio St.3d 76, 2010-Ohio-954, 926 N.E.2d 278, the state concedes this error, but argues that the error does not render Price's entire sentence void, but only mandates a limited remand for the purpose of allowing Price to request the trial court for a waiver of payment of costs. We agree with the state. *See Joseph* at ¶ 22-23 (when court costs are imposed in the journal entry but not in open court at the time of sentencing, the appropriate remedy is to remand the matter to the trial court for the limited purpose of allowing the defendant to move the court for a waiver of the payment of court costs).

**{¶55}** Accordingly, Price's assignment of error is sustained.

## VIII.  Mandatory Fine — Constitutional Challenge

{¶56} In his eighth assignment of error, Price contends that the mandatory fine imposed at the sentencing hearing infringes upon his rights under the Eighth and Fourteenth Amendments to the United States Constitution, R.C. 2929.18, 2929.19(B)(5), and 2947.14.

{¶57} The crux of Price's constitutional challenge actually appears to be that the trial court should have considered his ability to pay the fine before imposing the fine at sentencing, considering that the court declared him indigent on two occasions.

{¶58} Pursuant to R.C. 2929.18(A), a trial court imposing a sentence upon a felony offender may sentence the offender to any financial sanction or combination of financial sanctions the relevant statute authorizes.

{¶59} R.C. 2929.18(B)(1) provides that, for certain felony violations, "the sentencing court shall impose upon the offender a mandatory fine" of a specified amount.

> If an offender alleges in an affidavit filed with the court prior to sentencing that the offender is indigent and unable to pay the mandatory fine and if the court determines the offender is an indigent person and is unable to pay the mandatory fine described in this division, the court shall not impose the mandatory fine upon the offender."

*Id.*

{¶60} In this case, the mandatory fine was no less than one-half the fine amount for a felony in the first degree, which is $20,000.  R.C. 2929.18(A)(3)(a); (B)(1).  Therefore, the mandatory fine was no less than $10,000, which the court imposed.

{¶61} According to the Ohio Supreme Court, the statutes providing for mandatory fines "clearly require imposition of a mandatory fine unless (1) the offender's affidavit is filed prior to sentencing, and (2) the trial court finds that the offender is an indigent person and is unable to pay the mandatory fines."  *State v. Gipson*, 80 Ohio St.3d 626, 634, 1998-Ohio-659, 687 N.E.2d

750. The trial court need not, however, make an "affirmative finding that an offender is able to pay a mandatory fine." *Id*. at 635. Instead, "the burden is upon the offender to affirmatively demonstrate that he or she is indigent and is unable to pay the mandatory fine." *Id*.

**{¶62}** Before imposing a financial sanction under R.C. 2929.18, the trial court must consider "the offender's present and future ability to pay the amount of the sanction or fine." R.C. 2929.19(B)(6). Neither statute nor case law prescribes express factors a court must consider or findings a court must make when determining the offender's present and future ability to pay. *State v. Loving*, 180 Ohio App.3d 424, 2009-Ohio-15, 905 N.E.2d 1234, ¶ 9 (10th Dist.). Rather, the record need only reflect that the court considered the offender's present and future ability to pay before it imposed a financial sanction on the offender. *Id*.

**{¶63}** The record reflects that Price did not file an affidavit of indigency prior to sentencing. Moreover, the fact that Price was found indigent for purposes of court-appointed counsel, and the trial court expressly found him indigent at sentencing, does not preclude the trial court from imposing the fine upon defendant. *See Gipson* (determining a defendant's indigency at time of sentencing does not preclude a trial court from imposing a fine upon the defendant); *State v. Banks*, 6th Dist. Lucas No. WD-06-094, 2007-Ohio-5311, ¶ 15 (determining that an offender's indigency for purposes of appointed counsel is separate and distinct from a determination of being indigent for purposes of paying a fine).

**{¶64}** A review of the record here demonstrates the $ 10,000 fine imposed was not contrary to law or an abuse of the trial court's discretion. The fine was not greater than R.C. 2929.18(A)(3)(a) allows for a first-degree felony. Price did not file an affidavit of indigency prior to sentencing, and we can discern from the record that the court imposed the fine after considering defendant's present and future ability to pay the fine. Prior to imposing this fine,

the trial court again inquired about the $5,000 retainer that was paid to retained counsel that appeared on the first day of trial.

{¶65} Price's eighth assignment of error is overruled.

{¶66} Affirmed in part, reversed in part. Case remanded to the trial court for the limited purpose of allowing Price to request the trial court for a waiver of payment of court costs.

It is ordered that appellee recover from appellant costs herein taxed. The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for further proceedings consistent with this opinion.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


KATHLEEN ANN KEOUGH, JUDGE

MARY J. BOYLE, P.J., and
PATRICIA ANN BLACKMON, J., CONCUR