[Cite as *State v. Pendergrass*, 2017-Ohio-2752.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 104332**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## MICHAEL PENDERGRASS

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-598477-A

**BEFORE:** McCormack, P.J., E.T. Gallagher, J., and Stewart, J.

**RELEASED AND JOURNALIZED:** May 11, 2017

**ATTORNEY FOR APPELLANT**

Joseph V. Pagano
P.O. Box 16869
Rocky River, OH 44116


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

By:   Edward R. Fadel
Assistant County Prosecutor
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, OH   44113

TIM McCORMACK, P.J.:

{¶1} Defendant-appellant Michael Pendergrass appeals from his conviction following a guilty plea. For the reasons that follow, we affirm.

Procedural and Substantive History

{¶2} In August 2015, Pendergrass and his codefendant, Nathaniel Adams, were indicted on multiple charges stemming from a rape that occurred in 2003. The charges included several counts of rape, complicity to commit rape, aggravated robbery, and kidnapping. All charges included one- and three-year firearm specifications. Several counts included a sexually violent predator specification and/or sexual motivation specification.

{¶3} Ultimately, a plea agreement was reached. Pendergrass pleaded guilty to three counts of rape, in violation of R.C. 2907.02(A)(2), and the attendant one- and three-year firearm specifications (Counts 1, 2, and 3); three counts of complicity to commit rape, in violation of R.C. 2923.03(A)(2), and the attendant one- and three-year firearm specifications (Counts 4, 5, and 6); aggravated robbery, in violation of R.C. 2911.01(A)(3), and its attendant one- and three-year firearm specifications (Count 13); and kidnapping, in violation of R.C. 2905.01(A)(4), and its attendant one- and three-year firearm specification (Count 17). In exchange for the guilty plea, the state agreed to dismiss all remaining charges against Pendergrass, as well as the sexually violent predator specifications and sexual motivation specifications.

**{¶4}** At the sentencing hearing, the prosecutor presented the facts of the case, where he explained how two male strangers drove up to the victim, who was walking on Cleveland's west side, and asked the victim if she wanted to party. According to the prosecutor, the two men then, at gunpoint, forced the victim into the car, and they proceeded to drive around the west side. The prosecutor stated that the two men took turns beating and raping the victim. Both men raped her vaginally, anally, and orally. When they were finished, they "dumped" the victim, naked, in a parking lot. They threw some clothes at her. She was eventually able to call for help. An ambulance took her to the hospital for treatment. The victim suffered bruising to her right eye, face, and arms. She also had blood coming from her mouth, resulting from a cut in her mouth, and she had redness and swelling in her vaginal area. The hospital conducted a rape kit, and DNA evidence was collected. Several years later, a CODIS hit linked this DNA evidence to Pendergrass and his codefendant.

**{¶5}** The court heard from the victim, who stated that she has endured physical pain, including some hearing loss and a scar in her mouth, and 12 years of emotional torment. The victim also stated that as a result of the brutal attack, she has lost jobs and wages and she has had difficulty paying her bills.

**{¶6}** Pendergrass and defense counsel offered statements in mitigation.

**{¶7}** Thereafter, the court sentenced Pendergrass to six years in prison on the rape in Count 1, six years on the rape in Count 2, and five years on the rape in Count 3, as well as three years on the merged firearm specifications. The court ran the sentences

consecutively, after making the consecutive sentence findings in accordance with R.C. 2929.14(C)(4). The court then sentenced Pendergrass to concurrent six-year prison terms on each of the remaining charges, which included three counts of complicity (Counts 4, 5, and 6), aggravated robbery (Count 13), and kidnapping (Count 17). The court ordered the sentences on these remaining charges to be served concurrently with the rape charges. The court also ordered the sentence in this case to be served concurrently with the sentence Pendergrass is presently serving on another matter. The total prison sentence is 20 years.

{¶8} After imposing sentence, the trial court advised Pendergrass of mandatory postrelease control and the consequences for violation. The court then imposed court costs and ordered that Pendergrass may perform court community work service in lieu of paying costs.

{¶9} Pendergrass now appeals from his sentence, assigning the following errors for our review:

> I. Appellant's Sixth Amendment right to effective assistance of counsel was violated by the trial court's denial of his request to appoint new counsel.
>
> II. The trial court erred by failing to merge all allied offenses of similar import and by imposing separate sentences for allied offenses which violated appellant's state and federal rights to due process and protections against double jeopardy.
>
> III. The trial court erred by imposing consecutive sentences that are contrary to law and not supported by the record.

IV.   The trial court erred by imposing costs where it found appellant indigent and failed to consider his inability to pay.

## Ineffective Assistance of Counsel

{¶10} In his first assignment of error, Pendergrass states that he requested new counsel prior to the plea hearing, and the trial court denied his right to effective assistance of counsel when the court failed to appoint new trial counsel.

{¶11} Generally, when a defendant moves to disqualify his or her court-appointed counsel, it is the trial court's duty to inquire into the complaint and make it a part of the record.   *State v. Corbin*, 8th Dist. Cuyahoga No. 96484, 2011-Ohio-6628, ¶ 19, citing *State v. Lozada*, 8th Dist. Cuyahoga No. 94902, 2011-Ohio-823.   The inquiry, however, need only be brief and minimal.   *State v. King*, 104 Ohio App.3d 434, 437, 662 N.E.2d 389 (4th Dist.1995).

{¶12} The defendant bears the burden of demonstrating proper grounds for the appointment of new counsel.   *State v. Patterson*, 8th Dist. Cuyahoga No. 100086, 2014-Ohio-1621, ¶ 18.   "If a defendant alleges facts which, if true, would require relief, the trial court must inquire into the defendant's complaint and make the inquiry part of the record."   *Id.*, citing *State v. Deal*, 17 Ohio St.2d 17, 20, 244 N.E.2d 742 (1969).   The grounds for disqualification must be specific, not "vague or general."   *State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, 858 N.E.2d 1144, ¶ 68.

{¶13} Additionally, in order for the court to discharge a court-appointed attorney, the defendant must show "'a breakdown in the attorney-client relationship of such

magnitude as to jeopardize a defendant's right to effective assistance of counsel.'" *State v. Coleman*, 37 Ohio St.3d 286, 292, 525 N.E.2d 792 (1988), quoting *People v. Robles*, 2 Cal.3d 205, 215, 85 Cal.Rptr. 166, 466 P.2d 710 (1970). Defendant's right to counsel "'does not extend to counsel of the defendant's choice.'" *Patterson* at ¶ 20, quoting *Thurston v. Maxwell*, 3 Ohio St.2d 92, 93, 209 N.E.2d 204 (1965).

{¶14} Moreover, the defendant's request for new counsel must be timely. And where the defendant makes a timely request for new counsel and has demonstrated good cause, the trial court's "failure to honor [the] timely request * * * would constitute a denial of effective assistance of counsel." *State v. Armstrong*, 8th Dist. Cuyahoga No. 82497, 2003-Ohio-6891, ¶ 22.

{¶15} When timing is an issue, the trial court may determine whether the defendant's request for new counsel was made in bad faith. *State v. Price*, 8th Dist. Cuyahoga No. 100981, 2015-Ohio-411, ¶ 18, citing *State v. Graves*, 9th Dist. Lorain No. 98CA007029, 1999 Ohio App. LEXIS 5992 (Dec. 15, 1999). A request for new counsel made on the day of trial "'intimates such motion is made in bad faith for the purposes of delay.'" *Price*, quoting *State v. Haberek*, 47 Ohio App.3d 35, 41, 546 N.E.2d 1361 (8th Dist.1988).

{¶16} We review a trial court's decision whether to remove court-appointed counsel for an abuse of discretion. *Patterson,* 8th Dist. Cuyahoga No. 100086, 2014-Ohio-1621, at ¶ 19. An abuse of discretion implies that the court's decision was

unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶17} Here, on the day of trial, Pendergrass expressed concern regarding his court-appointed counsel, agreeing with the court's characterization of "having second thoughts" about his attorney. The court then inquired of Pendergrass regarding his concerns. Pendergrass stated that he had not had any conversations with his attorney about the case, he has not had an opportunity to review the evidence in his case, and the victim's statement that was provided to him in March 2016 conflicted with the information discussed with him during a taped interview. Pendergrass stated that his "problem" is that his attorney "never came and conversated [sic] with me or explained nothing about this case * * *. I've just been sitting here for 184 days knowing nothing" and that he has only met with his attorney on two occasions.

{¶18} In response, defense counsel stated that he has visited with his counsel more than twice while Pendergrass was in jail and he has met with him when Pendergrass was brought to the court for pretrials. Counsel stated that he and his client discussed the facts of the case, and in response to Pendergrass's request, they discussed obtaining a plea agreement. Counsel also explained to the court that the reason his client has not reviewed all of the evidence in the case is because much of the discovery is "marked [for] counsel only," as a means of preventing the distribution of confidential information being distributed throughout the jail. Nonetheless, counsel advised the court that because Pendergrass was "so insistent on getting them" and because they were very close to the

trial date, counsel ultimately gave his client copies of the DNA reports and the victim's statements. Finally, counsel explained that he and his client recently had "a very good discussion" regarding a possible change of plea, which was Pendergrass's expressed intent, and the fact that Pendergrass now desires new counsel is surprising.

{¶19} Thereafter, the trial court continued a discussion with Pendergrass. The court explained how matters of confidentiality typically prevent disclosure of some evidence to someone in jail, but the evidence may certainly be discussed with counsel in order to formulate trial strategy. The court also considered the "disharmony" between Pendergrass and counsel, as well as the untimeliness of Pendergrass's request, noting that there was "plenty of opportunity" prior to the day of trial to raise any issues Pendergrass may have had regarding counsel. Pendergrass indicated that he understood. Finally, after advising Pendergrass that his court-appointed counsel is a "well-qualified" and "competent" attorney who is ready to try the case should it proceed to a trial, the trial court denied Pendergrass's request for new counsel.

{¶20} Under the circumstances, we do not find the trial court abused its discretion in denying Pendergrass new counsel. The court considered Pendergrass's request at length and found the request was untimely and not supported by good cause. The denial of new counsel, therefore, did not constitute a denial of the effective assistance of counsel.

{¶21} Pendergrass's first assignment of error is overruled.

Allied Offenses

**{¶22}** In his second assignment of error, Pendergrass contends that the trial court erred by failing to merge the rape and kidnapping convictions. Specifically, he contends that the kidnapping was "merely incidental to the commission of the other crimes."

**{¶23}** R.C. 2941.25, the allied offenses statute, codifies the constitutional right against double jeopardy, thus prohibiting multiple punishments for the same offense. *State v. Robinson*, 8th Dist. Cuyahoga No. 99917, 2014-Ohio-2973, ¶ 53, citing *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 23. The statute provides when multiple punishments can and cannot be imposed:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. 2941.25; *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 12.

**{¶24}** In *Ruff*, the Ohio Supreme Court explained that when a defendant's conduct constitutes a single offense, the defendant may only be convicted and sentenced for that offense. *Id.* at ¶ 24. However, when the conduct "supports more than one offense, the court must determine whether the offenses merge or whether the defendant may be convicted of separate offenses. *Id.*

**{¶25}** In order to make this determination, the trial court must necessarily consider the defendant's conduct, specifically considering "how were the offenses committed." *Id.* at ¶ 25. In making this determination, the court must evaluate the defendant's conduct, his or her animus, and the import of the offenses:

> As a practical matter, when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation?

*Id.* at ¶ 31. If the answer is "yes" to any of the above, the defendant may be convicted of all of the offenses separately. *Id.*

> **{¶26}** The court in *Ruff* continued to explain that

> [w]hen a defendant's conduct victimizes more than one person, the harm for each person is separate and distinct, and therefore, the defendant can be convicted of multiple counts. Also, a defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable from the harm of the other offense.

*Id.* at ¶ 26; *State v. Black*, 2016-Ohio-383, 58 N.E.3d 561, ¶ 12 (8th Dist.).

**{¶27}** Here, Pendergrass pleaded guilty to Count 17, kidnapping in violation of R.C. 2905.01(A)(4), which provides that "[n]o person, by force, threat, or deception, * * *, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, * * * [t]o engage in sexual activity * * * with the victim against the victim's will." Pendergrass did not object at sentencing to the court's failure to conduct an allied offense analysis on the issue of whether the kidnapping in Count 17 merged with any other offense. We therefore review for plain error. *See State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 3.

**{¶28}** In *State v. Adams*, 8th Dist. Cuyahoga No. 104331, 2016-Ohio-8330, this court decided the appeal of Pendergrass's codefendant, Nathaniel Adams, in which Adams also alleged on appeal that the trial court erred in failing to merge the kidnapping with his other offenses. Pendergrass and Adams were sentenced together, and the record shows that Adams did not object at sentencing to this same merger issue. In Adams's appeal, we reviewed for plain error and found that based on the facts and circumstances of this case, Adams could not demonstrate a reasonable probability that the kidnapping offense would have merged with the rape offenses. In support, we stated:

> "Ohio courts have long held that where captivity is prolonged, or the movement of the victim is so substantial that it becomes significantly independent of any other criminal act, there exists a separate animus to support the kidnapping conviction. *See State v. Houston*, 1st Dist. Hamilton No. C-130429, 2014-Ohio-3111, ¶ 22. In such cases, the kidnapping offense ceases to be incidental to the underlying felony from which it might have originated. *See id.* at ¶ 23."

*Adams* at ¶ 13, quoting *State v. Cotton*, 2015-Ohio-5419, 55 N.E.3d 573, ¶ 29 (8th Dist.).

{¶29} Here, as in *Adams*, the victim, at gunpoint, was forced into a car and beaten. Pendergrass and Adams then took turns raping the victim while driving around the city, leaving her in a parking lot. *See id.* at ¶ 14. Under these facts, Pendergrass cannot demonstrate a reasonable probability that the kidnapping offense would have merged with his other offenses.

{¶30} Pendergrass's second assignment of error is overruled.

Consecutive Sentences

{¶31} In his third assignment of error, Pendergrass contends that the trial court erred by imposing consecutive sentences. Pendergrass does not argue that the trial court failed to make the consecutive sentence findings under R.C. 2929.14(C)(4). Rather, he argues that the record does not support the findings.

{¶32} In order to impose consecutive sentences, a trial court must make certain findings under R.C. 2929.14(C)(4) and incorporate those findings in the journal entry. *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, syllabus. R.C. 2929.14(C)(4) requires the court to find that (1) consecutive sentences are necessary to protect the public from future crime or to punish the offender, (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and (3) at least one of the following three findings set forth in R.C. 2929.14(C)(4)(a)-(c) applies:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under postrelease control for a prior offense.

> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶33} An appellate court may increase, reduce, or modify a sentence on appeal if it "clearly and convincingly" finds that the record does not support the sentencing court's findings made under R.C. 2929.14(C)(4). *See* R.C. 2953.08(G)(2)(a); *State v. Johnson*, 8th Dist. Cuyahoga No. 102449, 2016-Ohio-1536, ¶ 9.

{¶34} Here, the trial court stated that it considered the purposes and principles of felony sentencing under R.C. 2929.11 and the seriousness and recidivism factors under R.C. 2929.12 in fashioning its sentence. It also noted that Pendergrass has a prior criminal record that includes another rape charge for which he is currently serving time. Prior to imposing sentence, the court stated that it found the facts of the case disturbing and noted the "severe impact" the assault has had, and will continue to have, on the victim. Thereafter, the court then found that consecutive sentences are necessary in order to protect the public from future crime and consecutive sentences are not disproportionate to the seriousness of Pendergrass's conduct and the danger that conduct imposes to the public. The court then found that the offenses were committed as part of a course of conduct and the harm caused by the multiple offenses was so great or unusual that no single prison term would adequately reflect the seriousness of the defendant's conduct.

{¶35} Although acknowledging on appeal "the gravity of the rape offenses," Pendergrass alleges that the record does not support the finding that the harm caused by the multiple offenses committed was so great or unusual to warrant the imposition of a 20-year sentence because, as this was a cold case from 2003, he committed the crimes while in his 20's, he accepted responsibility for his actions, he felt badly about what had occurred, and he apologized for the incident. We disagree. Pendergrass forced the victim, at gunpoint, into a car and beat her, and then repeatedly raped her, orally, vaginally, and anally, while driving the victim around the city. During this time, Pendergrass sat idly by while his codefendant also beat and raped the victim orally, vaginally, and anally. Pendergrass and Adams then left the victim, half-naked and bleeding, in a parking lot. She suffered bruising to her eye and face, a cut in her mouth that has left a permanent scar, hearing loss, unending emotional torment, and difficulty maintaining employment. Under these circumstances, we cannot find that the record clearly and convincingly does not support the sentencing court's consecutive sentence findings under R.C. 2929.14(C)(4).

{¶36} Pendergrass's third assignment of error is overruled.

## Court Costs

{¶37} In his final assignment of error, Pendergrass alleges that the trial court erred in imposing costs where it found him indigent and it failed to consider his inability to pay.

{¶38} R.C. 2947.23(A)(1) governs the imposition of court costs and provides that "[i]n all criminal cases * * * the judge * * * shall include in the sentence the costs of

prosecution * * * and render a judgment against the defendant for such costs." The statute also provides that the court may order the defendant to perform community service as a means of paying the court costs. *Id.*; *State v. Clevenger*, 114 Ohio St.3d 258, 2007-Ohio-4006, 871 N.E.2d 589, ¶ 10. The statute does not, however, prohibit a court from assessing costs against an indigent defendant; rather, "it requires a court to assess costs against all convicted defendants." *State v. White*, 103 Ohio St.3d 580, 2004-Ohio-5989, 817 N.E.2d 393, ¶ 8; *State v. Brown*, 8th Dist. Cuyahoga No. 103427, 2016-Ohio-1546, ¶ 12. A defendant's financial status is therefore irrelevant for purposes of imposing court costs. *Clevenger* at ¶ 3; *State v. Bonton*, 8th Dist. Cuyahoga No. 102918, 2016-Ohio-700, ¶ 17.

{¶39} The trial court, however, has the discretion to waive court costs if the defendant makes a motion to waive costs. *Brown* at ¶ 13, citing *State v. Walker*, 8th Dist. Cuyahoga No. 101213, 2014-Ohio-4841, ¶ 9. This discretion to waive costs also includes the discretion not to waive them. *State v. Gilbert*, 8th Dist. Cuyahoga No. 104355, 2016-Ohio-8308, ¶ 6.

{¶40} Here, defense counsel moved the court to consider Pendergrass indigent for purposes of imposing court costs and any fine. The court determined that Pendergrass was indigent, but it nevertheless imposed costs. The court advised Pendergrass that he may perform court community work service in lieu of costs. Further, the court did not impose a fine. We find in this case the trial court acted within its discretion under R.C. 2947.23(A)(1) when it imposed court costs regardless of Pendergrass's indigency.

**{¶41}** Pendergrass's fourth assignment of error is overruled.

**{¶42}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
TIM McCORMACK, PRESIDING JUDGE

EILEEN T. GALLAGHER, J., and
MELODY J. STEWART, J., CONCUR